UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

---

JESSICA CHITTUM, on behalf of herself
and all others similarly situated,

              Plaintiff,

v.                                                              Case No. 5:24-CV-00082

NATIONAL LUTHERAN INC. d/b/a
NATIONAL LUTHERAN COMMUNITIES &
SERVICES, and
THE LEGACY AT NORTH AUGUSTA INC.,

              Defendants.

---

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY
CERTIFICATION AND APPROVAL OF SETTLEMENT CLASS**

---

## I.
### INTRODUCTION

This is a proposed settlement of an unpaid overtime action brought by Jessica Chittum ("Named Plaintiff"), on behalf of herself and all others similarly situated ("Plaintiffs"), against Defendants National Lutheran Inc. d/b/a National Lutheran Communities & Services and The Legacy at North Augusta ("individually or collectively "NLI" or "Defendants") under the Fair Labor Standards Act (FLSA) and state law.

In the Complaint (DN 1), Named Plaintiff asserted collective action claims under the FLSA's overtime provisions and class action claims under state overtime law. Named Plaintiff claimed, among other things, that the FLSA Collective consisted of all non-exempt employees of any Defendant, who worked more than 40 hours in at least one workweek, at any time within three years prior to this action's filing, or longer if equitable tolling is granted, to the trial of this action

(the "Relevant Period"), and that the Virginia Class consisted of all such employees who worked for Defendant in Virginia. Named Plaintiff alleged that Defendants has violated the FLSA and state overtime law by (1) not paying overtime compensation at 1.5 times Plaintiff's and similarly situated employees' regular rates of pay (the "Overtime Rate Policy"); and (2) not including shift differentials or other forms of incentive pay in calculating overtime rates paid to Plaintiff and similarly situated employees (the "Shift Differential Policy").

As explained more fully below, the Parties have negotiated a Settlement Agreement (the "Agreement") enclosed as Exhibit 1 to the Motion that will resolve the claims of the Named Plaintiff and a settlement class of agreed scope (the "Settlement Collective Members"). Under the Agreement, the FLSA overtime claims of the Settlement Collective Members will be resolved pursuant to an "opt-in" process consistent with the FLSA's consent process at 29 U.S.C. § 216(b). The state law overtime claims of the Settlement Collective Members will be resolved on a class wide "opt-out" basis pursuant to Federal Rule of Civil Procedure 23. The Parties reached the Agreement's monetary and non-monetary terms following several months of arm's-length negotiations.

By this Joint Motion, the Parties seek certification, solely and exclusively for settlement purposes, of a settlement collective (for the FLSA claims only) and for the state law claims, a settlement class pursuant to Federal Rule of Civil Procedure 23. Because the scope of the collective and class is the same (i.e., all potential members of the collective are also members of the class), for simplicity it is referred to as the Settlement Collective. The Settlement Collective the Parties ask this Court to preliminarily certify is:

> All current and former non-exempt employees of NLI or its affiliates who were employed in Maryland, Pennsylvania or Virginia during the applicable Damages Period (October 11, 2021 and December 6, 2024) and who are eligible to participate in this settlement, including the Maryland Wage Class Members, Pennsylvania

> Wage Class Members and Virginia Wage Class Members, as defined in the Settlement Agreement.. Specifically, these individuals have been identified by the Parties as meeting the criteria for the FLSA Collective as defined in the complaint in the Action, and who have FLSA unpaid overtime wage damages calculations arising from the facts alleged in the Action greater than or equal to one dollar. They are identified on Exhibit A to the Settlement Agreement.

(*See* Agreement, § 1.22.) Under the terms of the settlement, there are two processes by which Settlement Collective Members may choose to participate (and release claims), or not participate (and not release claims):

(1) To release FLSA claims, the individual must sign and return the FLSA Consent and Release form attached to the Notice (last page of Exhibit B to the Agreement);

(2) To release state law claims, the individual must not exclude themselves from the Settlement.

The scope of each release is narrowly tailored to release only the specific overtime wage claims raised in the Complaint during the Damages Period. (*See* Agreement, §§ 1.13-1.14.) Under the Agreement, all the Settlement Collective Members will receive an individualized pro rata payment, unless they both do not return an FLSA Consent and Release form (opt-in) and exclude themselves from the release of state law claims under Rule 23. Settlement Collective Members who both do not opt-in and do exclude themselves will receive no payment and release no claims.

Defendants will be funding the settlement and have agreed to pay the total sum of Two Hundred Eighty-Nine Thousand Five Hundred Thirty and 29/100 Dollars $(289,530.29) (subject to a reversion of any amounts due to Settlement Collective Members who both do not opt-in and opt-out), inclusive of any court-approved attorneys' fees and costs, any court-approved service award to the Representative Plaintiff, and payment of settlement administration costs (the "Gross Settlement Amount"), plus the employer's portion of payroll withholdings/taxes. Defendants will fund the entirety of the settlement and will tender the Gross Settlement Amount (as defined in the

Agreement), plus applicable taxes, to the Settlement Administrator.[1] The Settlement Administrator will distribute notices to the Settlement Collective Members and, thereafter, checks containing each Member's pro rata share of the Gross Settlement Amount. The Settlement Collective Members who do not timely sign and return an FLSA Consent and Release form will not release any FLSA claims. The Settlement Collective Members who exclude themselves from the state law release will not release state law claims.

The Parties believe the Agreement is fair, reasonable, and adequate, and that it satisfies all criteria for settlement approval.

## II.
### ISSUES PRESENTED

By this Joint Motion, the Parties ask the Court to: (1) preliminarily (and solely and exclusively for settlement purposes) certify a proposed settlement class pursuant to Rule 23(e) of the Federal Rules of Civil Procedure; (2) appoint Coffield PLC as Settlement Collective class counsel; (3) appoint Jessica Chittum as Representative Plaintiff for the Settlement Collective; (4) preliminarily approve the terms of and notice to be served in accordance with the Agreement; (5) preliminarily approve Plaintiffs' Counsel's request for attorneys' fees and costs; (6) set a date by which Named Plaintiff must file a motion for final settlement approval and award of attorneys' fee, expenses, and/or costs; (7) schedule any necessary Fairness Hearing; and (8) maintain jurisdiction over this matter solely for the purposes of enforcing the settlement during the pendency of the claims administration process.

## III.
### SUMMARY OF FACTS AND PROCEDURAL HISTORY

---

[1] As set forth in the Agreement attached as Exhibit 1 to the Motion, the Parties have elected to use ILYM Group, Inc. as the Settlement Administrator.

Plaintiff filed this case on October 11, 2024. (DN 1.) The Complaint alleged that Defendants violated state and federal law by (1) not paying overtime compensation at 1.5 times Plaintiff's and similarly situated employees' regular rates of pay (the "Overtime Rate Policy"); and (2) not including shift differentials or other forms of incentive pay in calculating overtime rates paid to Plaintiff and similarly situated employees (the "Shift Differential Policy").

In response, Defendants denied liability and disputed Plaintiff's allegations and damages calculations. The Parties ultimately requested, and were granted, a series of enlargements/stays to facilitate the exchange of data and settlement discussions.

Prior to settlement, the Parties exchanged massive volumes of information concerning wages and hours worked at Defendants' facilities referenced above to allow for meaningful and informed negotiation of the Gross Settlement Amount on behalf of all allegedly affected individuals. The Agreement reached resolves the overtime wage claims made by all 413 individuals allegedly affected by the payroll practices described in the Complaint and calls for a hybrid opt-in and/or opt-out settlement process. By this Motion, Named Plaintiff seeks, and Defendants do not oppose, preliminary Court approval of the Agreement.

## IV.
## SUMMARY OF SETTLEMENT TERMS

### A.    The Settlement Fund

The Parties have agreed to settle this matter for the Gross Settlement Amount of Two Hundred Eighty-Nine Thousand Five Hundred Thirty and 29/100 Dollars ($289,530.29). Included in that amount are Plaintiffs' Counsel's attorneys' fees and out-of-pocket expenses of One Hundred Four Thousand and 00/100 Dollars ($104,000.00), a service award for the Named Plaintiff of One Thousand and 00/100 Dollars ($1,000.00), and claims administration costs of Fourteen Thousand Five Hundred Thirty and 25/100 Dollars ($14,530.25). All remaining funds

($170,000.04) constitute the Settlement Collective Amount.  The Settlement Collective Amount shall then be allocated *pro rata* to each Settlement Collective Member according to their alleged damages (give or take a penny, due to Excel rounding).  Alleged damages were calculated based off time and pay data produced by Defendants with allocations to each Settlement Collective Member based off his/her "best realistic day" damages. The individual allocations are contained in Exhibit A to the settlement. Thus, the average total gross individual settlement amount to be received by each of the 413 Settlement Collective Members is approximately Four Hundred Eleven and 62/100 Dollars ($411.62). Amounts received are individualized, fact-specific, and vary widely depending on the amount of overtime worked by each Settlement Collective Member and how much they received in non-discretionary bonuses and shift differentials.

**B.    Schedule**

Under the Agreement, within fifteen (15) calendar days following preliminary approval of the Agreement Defendants will fund the settlement through a Qualified Settlement Fund ("QSF") to be established by the Settlement Administrator. No later than twenty (20) days following preliminary approval, the Settlement Administrator will disseminate the notice (Exhibit B to the settlement) of the settlement to the Settlement Collective Members. Settlement Collective Members will have thirty (30) days from the notice date to "opt out" and exclude themselves from the release of state law claims, and thirty (30) days to "opt-in" and participate in the release of federal FLSA claims.  Settlement Collective Members will have thirty (30) days from the notice date to file any objection to the settlement.  Following final approval, the Settlement Administrator will then disseminate settlement checks and payment of attorneys' fees in a manner consistent with the Agreement.  Each Settlement Collective Member who does not both (1) opt out, and (2) not

opt-in will receive their individualized payment and have one hundred eighty (180) days to deposit his or her check before it expires.

## C.    Releases

Each Settlement Collective Member will receive a Notice of Settlement of Class and Collective Action Lawsuit, Allocation, and Release ("Notice", Exhibit B) which will set out their individualized allocation.  As set forth in the Notice, each Settlement Collective Member who does not opt out of the release of state law claims will release Defendants as follows:

**Released State Law Claims**. If you do not submit a request to exclude yourself from the settlement, by operation of the Settlement Agreement you will release NLI from liability to you for any and all claims arising between October 11, 2021 and December 6, 2024 for overtime wages arising from (i) the alleged duplicative counting of hours in calculating overtime rates, or (ii) the alleged omission of shift differentials, bonuses or other forms of incentive compensation from the calculation of overtime rates, including for such Claims any liquidated damages, interest, costs, litigation expenses and attorneys' fees pursuant to Virginia or Maryland state wage and hour laws and wage payment laws ("Released State Law Claims")

As also set forth in the Notice, each Settlement Collective Members who opts-in to the release of FLSA claims will release Defendants as follows:

**Released FLSA Claims**. If you timely sign and return the Consent and Release of FLSA Claims, you will release NLI from liability to you for any and all claims arising between October 11, 2021 and December 6, 2024 for overtime wages arising from (i) the alleged duplicative counting of hours in calculating overtime rates, or (ii) the alleged omission of shift differentials, bonuses or other forms of incentive compensation from the calculation of overtime rates, including for such claims any liquidated damages, interest, costs, litigation expenses and attorneys' fees pursuant to the federal Fair Labor Standards Act, FLSA 29 U.S.C. §201, *et seq*. ("Released FLSA Claims").

If a Settlement Collective Member chooses to not participate in the settlement entirely, by properly informing the Settlement Administrator of their desire to exclude themselves from the release of state law claims and not opting-in to the release of FLSA claims, that individual will not release claims, and his/her pro rata allocation will be returned to Defendants.

## D.    Service Awards

In return for the risk she incurred and the services she rendered during this Action, subject to court approval, the Parties have agreed that the Named Plaintiff will be paid a Service Award of one thousand and 00/100 Dollars ($1,000.00).

**E.    Settlement Claims Administration**

The Parties have retained a third-party company, ILYM Group, Inc., to serve as the Settlement Administrator.  Consistent with the Agreement, the settlement administration fee will be paid from the Gross Settlement Amount. Among other things, the Settlement Administrator shall be responsible for establishing the Qualified Settlement Fund, disseminating the Notice, receiving opt outs, and calculating and remitting withholdings and disbursing settlement allocations.

**G.    Proposed Notice**

Under Rule 23(e), the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e). The Proposed Notice notifies Settlement Collective Members of this action and the claims asserted. The Proposed Notice is designed to inform the Settlement Collective Members of the substantive terms of the proposed Agreement, their rights, the nature of the releases, and how to participate or not participate in the settlement.  It also serves to inform them how to file any objection should they wish to do so. Additionally, as part of the Proposed Notice, each recipient will be informed of her/his person specific allocation, *i.e.*, their pro rata Individual Settlement Amount.

The Parties propose that the Proposed Notice be distributed by the Settlement Administrator via First Class Mail and/or email and/or text, depending on what contact information Defendants have for the individuals.

**E.    Attorneys' Fees and Litigation Costs**

Under the terms of the Agreement, subject to Court approval, the Parties agree that Settlement Collective class counsel will receive One Hundred and Four Thousand and 00/100 Dollars ($104,000.00) in attorneys' fees and costs, which is approximately 35.9% of the Gross Settlement Amount.  Under the Agreement, attorney fees and costs are not to exceed this amount. Such amount is a reduction from the percentage amount (40%) agreed to in counsel's engagement agreement(s) with the Named Plaintiff.[2]

Counsel will submit a request for approval of these attorneys' fees and costs as part of, or in conjunction with, the Final Approval Motion, at a date to be set by this Court.

## V.
### ARGUMENT & AUTHORITIES

## A.    Standard of Review

The FLSA requires court approval of settlements.  *Winingear v. City of Norfolk*, No. 2:12CV560, 2014 WL 12526327, at *1 (E.D. Va. June 5, 2014) (citing *Patel v. Barot*, No. 4:13cv59, 2014 WL 1624001, at *4 (E.D. Va. April 23, 2014)). Similarly, "Federal Rule of Civil Procedure 23(e) requires court-approval of any proposed settlement of a class action lawsuit, and further requires that class members receive notice of the settlement before the court approves it." *Id.* "The factors governing court approval of settlements under Rule 23 and the FLSA are similar." *Id.* (citing *Lomascolo v. Parsons Brinckerhoff. Inc*., No. 1:08cv1319, 2009 WL 3094955, at *11 (E.D. Va. Sep. 28, 2009)).

---

[2] This percentage is well in line with cases approving "percent of recovery" fees in settlements. *See Winingear v. City of Norfolk, Va.*, No. 2:12CV560, 2014 WL 3500996, at *6 (E.D. Va. July 14, 2014) (awarding 38.44% ($1,230,250.00) in fees and costs on a $3,200,000 FLSA settlement and noting that "this Court has routinely approved percentage recoveries in FLSA cases approaching forty percent of the total recovery"); *Gagliastre v. Capt. George's Seafood Rest.,* LP, No. 2:17CV379, 2019 WL 2288441, at *5 (E.D. Va. May 29, 2019) ("Fees awarded under "the percentage-of-recovery" method in settlements under $100 million have ranged from 15% to 40%).

There are typically three stages applicable to the review of a proposed class action settlement. *See* Manual For Complex Litigation (4th) § 21.632–.634. First, the court conducts a preliminary fairness evaluation and, if applicable, considers certification of a settlement class. *See id.* at § 21.632 (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined). Second, if the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice to the settlement class members. *Id.* at § 21.633. Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.* at § 21.634.

## B.    Preliminary Class Settlement Approval Process

Courts should "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for the affected parties and . . . promote judicial efficiency." *Gunnells v. Health Plan Services, Inc*., 348 F.3d 417, 424 (4th Cir. 2003) (citing *In re A.H. Robins*, 880 F.2d 709, 740 (4th Cir. 1989)); *see also Kidwell v. Transportation Communications International Union*, 946 F.2d 283, 305 (4th Cir. 1991) (The "[t]rend is to give Rule 23 a liberal construction."); *Rodger v. Electronic Data Systems Corp*, 160 F.R.D. 532, 535 (E.D.N.C. 1995). When a settlement is reached prior to Rule 23 certification, the law permits a class to be certified solely for the purposes of settlement. Fed. R. Civ. P. 23(e); *Gonzalez v. O.J. Smith Farms, Inc*., No. 5:20-CV-00086-FL, 2020 WL 7388435, at *2 (E.D.N.C. Dec. 16, 2020). Although Rule 23(e) does not delineate a procedure for court approval of settlements of class actions, courts have generally followed a multi-step process. *See* Fed. R. Civ. P. 23(e)(2).

Federal courts generally find that preliminary approval of settlement and notice to the proposed settlement class is appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." Newberg on Class Actions § 13:13 (5th ed. 2011).

At the preliminary approval stage, courts must both ensure that all of the requirements of Rule 23(a) and at least one of the sections of 23(b) are satisfied and determine that the settlement falls within the range of possible approval. *See* Fed. R. Civ. P. 23(a)–(b); *Winingear*, 2014 WL 12526327, at *1 (quoting *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) (recognizing that courts must "consider plaintiffs' expected recovery balanced against the value of the settlement offer" in determining if the settlement falls within the range of possible approval)). Preliminary approval requires an exacting and thorough examination of the settlement at issue, not merely a "judicial rubber-stamp" of the parties' agreement. *Id.* The Court must be provided with the necessary information "to evaluate the fairness or adequacy of a proposed settlement." *Id.* (citing *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383–84 (D. Minn. 2013)). There is a strong judicial policy in favor of settlement. *Gonzalez*, 2020 WL 7388435, at *2 (citing *Bennett v. Behring Corp.*, 737 F. 2d 982, 986 (11th Cir. 1984)).

## C.    Rule 23's Requirements Are Satisfied by the Proposed Class Settlement

Named Plaintiff seeks class certification under Rule 23(b)(3). The certification requirements of Rule 23 generally apply even when, as here, certification is solely and exclusively for settlement purposes. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997); *see also* Fed. R. Civ. P. 23(b)(3). To be certified, the proposed class must first satisfy the four threshold requirements of Rule 23(a), which provide that:

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4)    the representative parties will fairly and adequately protect the interests of the class.

*See* Fed. R. Civ. P. 23(a).

If the prerequisites of Rule 23(a) are met, a proposed class seeking damages must also satisfy the requirement of Rule 23(b)(3). Rule 23(b)(3) requires the district court to make a finding that (1) questions of law or fact common to class members predominate over questions affecting only individual members, and (2) that a class action is superior to the other methods for fairly and efficiently adjudicating the controversy. *See id.* at 23(b)(3). However, the trial court does not examine the merits of the underlying claims when it decides a motion for class certification. *Gonzalez*, 2020 WL 7388435, at *4 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974)).

Defendants do not oppose class certification solely and exclusively for purposes of this settlement, but reserve all rights (including, but not limited to, the right to challenge class certification) in the event the settlement is not preliminarily or finally approved.

1.    The Proposed Class Satisfies Rule 23(a)(1)'s Numerosity Requirement

Rule 23(a)(1)'s numerosity requirement is met if the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). *See Haywood v. Barnes*, 109 F.R.D. 568, 576–77 (E.D.N.C. 1986) (recognizing courts have "certified classes composed of as few as eighteen . . . and twenty-five members").

Here, the numerosity requirement is certainly met. There are 413 potential members of the Settlement Collective. Such numbers show that individual joinder would be impracticable. *See id.*

2.    The Proposed Class Satisfies Rule 23(a)(2)'s Commonality Requirement

Under the "commonality" requirements of Rule 23(a)(2) of the Federal Rules of Civil Procedure, at least one common question of law or fact must exist among class members. *See Haywood*, 109 F.R.D. at 577–78. Commonality under Rule 23(a)(2) is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 348, 350 (2011).

> Their claims must depend on a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of class-wide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id.* "It is not necessary, however, that all of the questions of law or fact in a case be common to all putative class members, but only that 'a single common question . . . exist.'" *Gonzales*, 2020 WL 7388435, at * 5. Typically, commonality is satisfied when all claims are based on the same legal theory—that workers were not paid all promised wages when due, factual difference among the putative class members will not defeat certification. *Id.* (discussing *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117 (E.D.N.C. 2011)).

Here, Named Plaintiff asserts that NLI employed or jointly employed all 413 individuals comprising the Settlement Collective, and that all such individuals were subject to pay practices that underpaid overtime compensation through the Overtime Rate Policy and Shift Differential Policy discussed above. Though there are certainly some factual differences among the 413 individuals, the success or failure of each Settlement Collective Member's claim turns on the common questions of whether or not Defendants (or either of them) failed to calculate overtime rates using a 1.5 multiplier and/or failed to include shift differentials and other forms of incentive

compensation in calculating overtime rates, whether these policies if established violated overtime rules, the proper measure of damages (if any) attributable to said policies, and whether these individuals could be deemed employees or joint employees of NLI.

3.    The Proposed Class Satisfies Rule 23(a)(3)'s Typicality Requirement

Rule 23(a)(3) provides that class certification is appropriate where the claims of the representative plaintiff are typical of the claims of the class. The typicality requirement "goes to the heart of a representative parties' ability to represent a class, particularly as it tends to merge with the commonality and adequacy-of-representation requirements." *Deiter v. Microsoft Corp*., 436 F.3d 461, 466 (4th Cir. 2006). "That is not to say that typicality requires that the plaintiffs' claim and the claims of class members be perfectly identical or perfectly aligned." *Id.* at 467. "[T]he test for typicality is not demanding." *James v. City of Dallas, Tex*., 254 F.3d 551, 571 (5th Cir. 2001). Instead, the typicality inquiry focuses on the "similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *See id.* (citations omitted).

> Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.

*Id.* (quoting 5 *James W.M. Moore, et al*., Moore's Federal Practice ¶ 23.24[4] (3d ed. 2000).

The named plaintiff must "simply 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Lienhart v. Dryvit Sys., Inc*., 255 F.3d 138, 147 (4th Cir. 2001). "Factual variances in the amount of damages claimed, or differences in the availability of certain defenses against the representative plaintiffs, does not prohibit a finding of typicality as long as the claims are based on the same legal or remedial theory." *Jeffreys v. Communs. Workers of Am*., 212 F.R.D. 320, 322 (E.D. Va. 2003).

Here, Named Plaintiff submits there are no factual distinctions between her claims and those of the Settlement Collective. All 413 proposed Settlement Collective Members were allegedly subject to the same policies and practices of not paying overtime at a full 1.5 multiplier and/or not fully including shift differentials and non-discretionary bonuses in the calculation of overtime rates. The Settlement Collective shares the same legal interest in recovering its overtime damages based on the same legal theory—that they were not fully compensated for overtime worked.

4.    The Proposed Class Satisfies Rule 23(a)(4)'s Requirement for Adequacy of Representation

Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157, n. 13 (1982)). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* at 625–26 (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). To meet the adequacy requirement, "the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys*, 212 F.R.D. at 323. A conflict between the Representative Plaintiff and the Class Members "must be more than merely speculative or hypothetical[ ]" to defeat the adequacy requirement—instead, the "conflict must be fundamental." *Gunnells*, 348 F.3d at 430.

Here, both aspects of Rule 23(a)(4)'s adequacy requirement are met. There is no conflict between the interests of the Named Plaintiff and the Settlement Collective Members; and (2)

Settlement Collective Counsel is experienced in litigating complex class and multi-party actions like the one at issue. First, Named Plaintiff contends that (1) she is typical of the Settlement Collective, so she will fairly and adequately represent the interests of the 413 affected individuals; (2) there is no potential conflict between her and the other members of the proposed Settlement Collective because they are challenging practices that applied uniformly to all Settlement Collective Members; and (3) her interests do not differ from those of the Settlement Collective as a whole, in that she seeks to benefit the proposed Settlement Collective by obtaining damages for all Settlement Collective Members. Second, Settlement Collective Counsel is experienced in this type of litigation and has the resources to fully litigate this matter through trial on the merits, should such further litigation be required. *See* Declaration of Tim Coffield, attached hereto as Exhibit 1.

     5.    <u>The Proposed Class Satisfies Rule 23(b)'s Requirement for Predominance and Superiority</u>

Class certification under Rule 23(b)(3) requires that common issues of law or fact predominate over individual issues and that the class action be the superior method of dealing with the dispute. *See* Fed. R. Civ. P. 23(b).

     i.    *Predominance Under Rule 23(b)(3)*

Rule 23(b)(3)'s predominance prerequisite requires courts to ask "whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454, 136 S. Ct. 1036, 1045 (2016) (quoting 2 Newberg on Class Actions § 4:49 (5th ed. 2012)). Put differently, the predominance inquiry is about whether class-wide questions are "at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Def. Comm.*, 501 F.3d 592, 619 (6th Cir. 2007).

In this case, the proposed classes satisfy the Rule 23(b)(3) predominance requirement because all Settlement Collective Members share a common set of core facts and legal issues, including but not limited to:

1) Having worked for one or more Defendants as described above;

2) Having been classified as non-exempt; and

3) Having allegedly been paid overtime at rates using a multiplier less than 1.5 and/or that did not fully include shift differentials or other incentive compensation.

The superiority element of Rule 23(b)(3) requires that the purported class action be superior to other available methods for the fair and efficient adjudication of the controversy. *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 274 (4th Cir. 2010). This is a fact-specific inquiry which requires the Court to find the objective of the class-action can be achieved in a particular case. *Id.* Rule 23(b)(3) identifies four factors relevant to the superiority inquiry:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D). Courts also look at practical reasons that a class action may be superior such as the preservation of judicial economy. *Manuel v. Wells Fargo Bank, N.A.*, No. 3:14-cv-238, 2015 U.S. Dist. LEXIS 109780, at *48 (E.D. Va. Aug. 19, 2015).

Here, Named Plaintiff contends that a class action is superior to other methods of adjudication. First, the objectives of this lawsuit—recovering unpaid overtime damages for all Settlement Collective Members within the maximum statute of limitations period—can be fairly and efficiently achieved through the class resolution of this case. Second, the pertinent factors listed in Rule 23(b)(3)(A)–(D) point toward a class action being the superior method of adjudicating this case.

Under the 23(b)(3)(A) factors, to the Parties' knowledge no one before this Court has expressed a desire to prosecute their claims individually, and 413 similarly situated individuals stand to benefit from the resolution of this matter. There is no reason to presume that any of the absent Settlement Collective Members—none of whom have pursued these claims on his or her own—would desire to control the litigation of a separate case. It is more likely that the absent Settlement Collective Members will consent to class resolution since the 413 Settlement Collective Members are slated to receive an average amount of about $411.62 per person. This represents about 150% of what Named Plaintiff believes is these 413 individuals' best day unpaid back pay figures on the FLSA claims at issue in the case, using a three-year lookback period, and about 75% of what Named Plaintiff believes is these individuals best day back pay plus liquidated damages figures on the FLSA claims at issue in the case, based on the time and pay data produced and modeling based thereon.

The superiority factor in Rule 23(b)(3)(B) is likewise resolved in favor of class resolution because there are no other similar pending suits of which the Parties are aware.

The Rule 23(b)(3)(C) factor also demonstrates the superiority of this class action in this forum because a significant portion of Settlement Collective Members' work was performed within this District and Division, including the work of the Named Plaintiff. This Court therefore has a substantial interest in the resolution of the issues raised in this litigation occurring in one forum. Accordingly, this particular forum is a desirable and convenient forum, and superior to any other forum for this action to proceed.

Finally, and practically, preliminarily certifying a settlement class is superior here because the alternative method of adjudication requires holding numerous separate trials. Class resolution achieves economies of time, effort, and expense, and promotes uniformity of decision.

**D.      The Proposed Class Settlement Satisfies a Preliminary Fairness Evaluation**

In determining a motion for preliminary approval of a class settlement, the Court reviews the proposed settlement to make a preliminary fairness evaluation. *See Shaver v. Gills Eldersburg, Inc*., No. 14-3977-JMC, 2016 U.S. Dist. LEXIS 54578, at *5 (D. Md. Apr. 25, 2016). Preliminary approval should be granted if the proposed settlement is within the range of possible approval. *Id.*

Here, undersigned counsel submits that this settlement is well within the upper range of possible approval.   As mentioned above, this settlement will provide Settlement Collective Members with settlement amounts estimated at about 150% of their best day unpaid back pay figures on the FLSA claims at issue in the case, and about 75% of their best day back pay plus liquidated damages figures on the FLSA claims at issue in the case, with releases appropriately tailored to the practices at issue in the Complaint.

At this step, the court is only to determine whether there is "probable cause" that the proposed settlement is fair and reasonable. *In re Mid-Atl. Toyota Antitrust Litig*., 564 F. Supp. 1379, 1380 (D. Md. 1983). A settlement is fair where it is the product of good-faith, arm's length bargaining without collusion. *In re Jiffy Lube*, 927 F.2d 155, 159 (4th Cir. 1991). In determining fairness, courts look at "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *Id.*

1.      The Proposed Settlement is Fair

Here, the four fairness factors favor a "probable cause" finding and approval of the proposed settlement. This settlement is not the result of collusion—but rather the result of a case that has been contested from the beginning. This case only settled after the Parties engaged in a

protracted arm's-length negotiation, informed by significant time and pay data furnished by Defendants, with each of the Parties represented by experienced and competent counsel.

      i.     *Posture of the Case*

This resolution came only after the Parties engaged in a protracted negotiation including the exchange of voluminous time and pay data and damages modeling based thereon. Had the dispute not resolved, additional resources would have been expended, but the Settlement Collective's damages very likely would not have increased. Thus, the Parties were able to efficiently and effectively evaluate the exposure and risks of continued litigation, and exchange damages models, a process that resulted in the settlement now being presented to the Court. The Parties then worked collaboratively to draft the comprehensive Agreement now presented for this Court's review and approval.

      ii.     <u>Extent of Discovery</u>

Defendants provided years' worth of time and pay data, and the Parties discussed damages modeling based thereon. In addition to the informal discovery exchanged between the Parties, counsel also conferred extensively with their respective clients in this matter. These conversations – including conversations between undersigned counsel and the Named Plaintiff – further corroborated the information received and allowed undersigned counsel to meaningfully negotiate on behalf of the Settlement Collective Members.

Informal discovery in this case has been sufficient such that both sides know the important facts affecting the case and have adequately assessed the respective benefits of settlement and potential risks of continued litigation and/or arbitration. In addition, the Parties committed substantial time to investigating and analyzing the claims of the putative class, and defenses thereto. The agreed upon settlement calculations are based on and derived from the time and pay

data exchanged in informal discovery on behalf of the Settlement Collective Members, supporting the fairness of the overall proposed settlement.

### iii.    Circumstances Surrounding the Negotiations

The negotiations that resulted in this settlement were conducted at arms' length among experienced counsel over the course of several months. The Parties have continued to negotiate in good faith to fully finalize the Agreement before this Court. The Parties exchanged numerous drafts of the Agreement and worked to resolve settlement issues as they arose during the drafting process.

### iv.    Experience of Counsel

Undersigned counsel is an experienced litigator who has devoted much of his practice to representing employees in wage and hour litigation. *See generally* Exhibit 1. Likewise, counsel for each of the Defendants are very experienced in wage and hour litigation and represent employers in Virginia and other numerous other states.

### v.    Degree of Opposition to the Settlement

As the Proposed Notice has not yet issued to the Settlement Collective Members, Plaintiff is unable to fully respond to this factor. However, Named Plaintiff approved and executed the Agreement promptly and was pleased with the results.  This factor will be fully addressed in the motion for final approval, should this Court preliminarily approve the Agreement and authorize the issuance of Proposed Notice.

An examination of the four fairness factors clearly demonstrates this proposed settlement is not the result of collusion, but is the product of good-faith, arm's length bargaining. Therefore, this proposed settlement should be approved as fair.

### 2.    The Proposed Settlement is Adequate

The adequacy factors equally favor approval of the proposed settlement. While the adequacy factors are more relevant to this Court's decision in the final approval motion, they do provide guidance at the preliminary approval stage that the settlement is appropriate for certification. *See In re Jiffy Lube*, 927 F.2d at 159.

          i.    <u>Strength of Named Plaintiff's Case on the Merits</u>

Named Plaintiff has asserted that she was underpaid overtime due to what she contended were Defendants' practices of paying overtime at less than a 1.5 multiplier and failing to include certain forms of compensation in calculating overtime rates. Defendants denied Named Plaintiff's allegations, denied liability, and asserted that Settlement Collective Members either are not owed any overtime compensation, or were owed less than the amounts asserted in Plaintiff's damages model, and asserted that any alleged underpayment was the result of a bona fide dispute about the amounts purportedly owed. Ultimately, liability in whatever forum would likely turn on whether Defendants paid overtime using the proper multiplier, whether the incentive compensation at issue was non-discretionary and required to be including in overtime calculations, whether Defendants (or either of them) included such incentive compensation and shift differentials in calculating overtime rates, whether Defendants (or either of them) had a good faith basis for its pay practices, making liquidated damages unavailable, and whether Defendants (or either of them) did not willfully violate any overtime rules, making only two years (rather than three years) of backpay available. *See* 29 U.S.C. § 260 (good faith defense to liquidated damages); 29 U.S.C. § 255(a) (two year lookback by default, three years for willful violations only). Named Plaintiff asserted that liability would have been found on these issues but acknowledges that Defendants contend otherwise. Likewise, Defendants believe that there would be no finding of liability on these issues, no liquidated damages, and no willfulness, but acknowledge that Named Plaintiff contended

otherwise. The Agreement provides for substantial compensation for Plaintiff and Settlement Collective Members' claims and negates the risk of a bad result.

### ii.    Difficulties of Proof and Defenses

In order to prevail on the threshold liability aspect their claims, the Settlement Collective would be required to prove that Defendants had a policy of paying overtime at less than a 1.5 multiplier and that the various forms of incentive compensation at issue were "non-discretionary" and that Defendants (or either of them) did not include such compensation in calculating overtime rates.   The non-discretionary issue would have required an analysis of the types of incentive compensation and how they were calculated, and if the Settlement Collective did not prevail on this issue, their damages would be reduced or non-existent. In addition, if successful on the threshold liability issues, to obtain a third year of damages, the Settlement Collective would have had to show that any violations by Defendants were willful. Defendants vigorously contested the willfulness assertion. The Settlement Collective would further have to contend with Defendants' "good faith" affirmative defense that, if successful, would have precluded the recovery of liquidated damages.   These uncertainties weigh in favor of the adequacy and certainty of the proposed settlement.

### iii.    Duration and Expense of Additional Litigation

This settlement is properly juxtaposed against what would likely be a longer and more drawn out, and expensive, litigation (including possibly appeals) should this matter proceed.  The length of time necessary to reach a final result would have occupied many more months or even years of judicial resources and vast amounts of attorney time. Litigating this case to conclusion would potentially cost each side hundreds of thousands of dollars in additional attorneys' fees

while very likely not resulting in significantly better recoveries for the Settlement Collective. Therefore, this factor also supports the adequacy of the proposed settlement.

### iv.    Solvency of Defendant and Likelihood of Recovery

The fourth adequacy factor, Defendants' financial solvency, does not bear significantly either way in considering the adequacy of the settlement. However, while Defendants each appear to be currently solvent and in good financial health, Plaintiff has no idea if that will remain true years into the future—which is a reasonable timeline by which this litigation can be resolved, absent settlement.  Defendants have agreed to pay Two Hundred Eighty-Nine Thousand Five Hundred Thirty and 29/100 Dollars ($289,530.29) now to resolve the pending litigation and represents it is capable of funding the settlement payments according to the deadlines set forth herein. Under the Agreement, the settlement would be funded to the Settlement Administrator before the Proposed Notice is sent to the Settlement Collective. This proposed settlement provides compensation and a level of certainty for the Settlement Collective Members—now, not several years into the future.

### v.    Degree of Opposition to the Settlement

As notice of the settlement has not yet issued to the Settlement Collective Members, review of this factor is premature. However, as stated, the Named Plaintiff has approved of and willingly executed the Agreement before the Court.  The Parties will have further insight regarding the degree of opposition to the settlement, if any, before the filing of the Final Approval Motion.

Accordingly, all five of the adequacy factors favor approving this proposed settlement. Therefore, this proposed settlement should be approved as adequate.

## CONCLUSION

Wherefore Named Plaintiff Jessica Chittum, without opposition from the Defendants (or either of them), respectfully requests that the Court preliminary approve the Agreement and enter the Proposed Order provided as an attachment to this Motion.

Respectfully submitted,

JESSICA CHITTUM, on behalf of herself and others similarly situated,
By Counsel

/s/Timothy Coffield
Timothy Coffield (VSB 83430)
COFFIELD PLC
106-F Melbourne Park Circle
Charlottesville, VA 22901
P: (434) 218-3133
F: (434) 321-1636
tc@coffieldlaw.com

Counsel for Plaintiffs

NATIONAL LUTHERAN INC. d/b/a NATIONAL LUTHERAN COMMUNITIES & SERVICES, and THE LEGACY AT NORTH AUGUSTA INC.,
By Counsel

/s/ Jessica Summers
Jessica Summers (VSB #84513)
7600 Wisconsin Ave, Suite 700
Bethesda, MD 20814
Tel: (301) 657-3442
jbsummers@lerchearly.com

Counsel for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 18, 2025, I electronically filed the foregoing document with the clerk of the court using the electronic case filing system which will send notice of the same to all counsel of record.

<u>/s/ Timothy Coffield</u>