IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

CLERKS OFFICE US DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED

June 18, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ Nik Sams
DEPUTY CLERK

JESSICA CHITTUM, et al.                 )
    Plaintiffs,                         )
                              )   Civil Action No. 5:24-cv-00082
v.                                       )
                              )   MEMORANDUM OPINION
NATIONAL LUTHERAN INC., et al.           )
    Defendants.                         )   By:   Joel C. Hoppe
                              )         United States Magistrate Judge

This matter is before the Court on the parties' Joint Motion for Final Settlement Approval.[1] Joint Mot. for Approval, ECF No. 38. The parties have also filed a brief in support of their motion, Br. in Supp., ECF No. 39; the declaration of Plaintiffs' counsel Timothy Coffield, Esq., Coffield Decl., ECF No. 41-1; the declaration of Cassandra Polites of third-party settlement administrator the ILYM Group, ILYM Decl., ECF No. 39-1; the final version of the Settlement Notice and FLSA Consent and Release Form, Notice, ECF No. 39-1, Ex. A; and the proposed Settlement Agreement, Agreement, ECF No. 21-1.

Having heard from the parties at a fairness hearing on April 13, 2026, ECF No. 40, and having considered the parties' submissions and representations, the Court finds that the proposed settlement meets the requirements of the FLSA and Rule 23 and is fair, reasonable, and adequate. Accordingly, the Court will grant the parties' motion, ECF No. 38, approve the Settlement Agreement, ECF No. 21-1, and dismiss the case with prejudice. The Court will retain jurisdiction for 120 days to enforce the Settlement Agreement.

## I. Background

Named Plaintiff Jessica Chittum brought this action on behalf of herself and similarly situated current and former employees of Defendants National Lutheran Inc., d/b/a National

---

[1] The parties consented to the jurisdiction of the undersigned Magistrate Judge under 28 U.S.C. § 636(c). ECF No. 19.

Lutheran Communities and Services, and The Legacy at North Augusta Inc. (collectively, "National Lutheran") to recover damages for alleged unpaid overtime wages. *See* Am. Compl. ¶¶ 1–10, ECF No. 29. This is a "hybrid" collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and class action under Federal Rule of Civil Procedure 23 and the Virginia Overtime Wage Act ("VOWA"), Va. Code § 40.1-29.2; the Maryland Wage and Hour Law ("MWHL"), Md. Code, Lab. & Empl. § 3-415(a); and the Pennsylvania Minimum Wage Act ("PMWA"), 34 Pa. Code § 231.41. *Id.* ¶¶ 1–2.

National Lutheran operates long-term care facilities for older adults, including The Legacy at North Augusta in Staunton, Virginia. *Id.* ¶¶ 16–17, 19–20. Chittum is a Certified Nursing Assistant who worked for National Lutheran at The Legacy at North Augusta from July 2023 to February 2024. *Id.* ¶ 24. Chittum alleges that National Lutheran: (1) failed to pay her and similarly situated employees 1.5 times their regular rates of pay for overtime hours (i.e., hours worked beyond 40 hours per week); and (2) failed to account for shift differentials, bonuses, and other forms of incentive pay when calculating overtime rates for her and similarly situated employees. *Id.* ¶¶ 29–36.

On October 11, 2024, Chittum filed this action against National Lutheran, asserting a collective action claim under the FLSA and a class action claim under the VOWA, Va. Code § 40.1-29.2. ECF No. 1. National Lutheran "denied liability and disputed [Chittum's] allegations and damages calculations." Br. in Supp. 2. The parties requested, and the Court granted, a series of motions to extend National Lutheran's pleading deadline to "foster exchange of information and settlement discussion." *Id.*; *see* ECF Nos. 4, 6, 9–18. Recognizing that early resolution of the case might be mutually beneficial, National Lutheran provided Plaintiffs' counsel with multiple years' of wage and hour data from across its facilities so the parties could compare damages models and engage in informed negotiations. *See* Br. in Supp. 7–8. Analyzing this data,

Plaintiffs' counsel identified 410[2] similarly situated individuals who worked for National

Lutheran in Virginia, Maryland, and Pennsylvania, and who were allegedly affected by the

complained-of overtime policies. *See id.* at 2. Months of "protracted negotiations and exchange

and debate over legal theories and damages models" culminated in the proposed Settlement

Agreement. *Id.* at 8.

On September 18, 2025, the parties moved for preliminary certification of a "Settlement

Collective," preliminary approval of the Settlement Agreement, and approval of a proposed

Settlement Notice for distribution. Joint Mot. for Prelim Cert., ECF No. 21; *see also* Br. in Supp.

of Prelim. Cert., ECF No. 22. The parties define the "Settlement Collective," which is both a

FLSA settlement collective and Rule 23 class[3] divided into Virginia, Maryland, and

Pennsylvania subclasses, as follows:

> All current and former non-exempt employees of [National Lutheran] or its
> affiliates who were employed in Maryland, Pennsylvania or Virginia during the
> applicable Damages Period (October 11, 2021 and December 6, 2024) and who are
> eligible to participate in this settlement, including the Maryland Wage Class
> Members, Pennsylvania Wage Class Members and Virginia Wage Class Members,
> as defined in the Settlement Agreement. Specifically, these individuals have been
> identified by the Parties as meeting the criteria for the FLSA Collective as defined
> in the complaint in the Action, and who have FLSA unpaid overtime wage damages
> calculations arising from the facts alleged in the Action greater than or equal to one
> dollar. They are identified on Exhibit A to the Settlement Agreement.

ECF No. 21, at 1–2; *see* Member List, ECF No. 21-1, Ex. A (providing an anonymized list of

Settlement Collective members with "Individual Settlement Amount[s]" broken out into "Wages

(W2)" and "Liquidated [Damages] (1099)").

---

[2] Plaintiffs' counsel initially identified 413 individuals. Br. in Supp. 2 n.2. "Upon review by the claims administrator," however, "it turned out that there were three duplicates in the list." *Id.* Accordingly, the correct figure—which includes Chittum herself—is 410 individuals.

[3] As the parties explain, "the scope of the collective and class is the same (i.e., all potential members of the collective are also members of the class)," so "for simplicity it is referred to as the Settlement Collective." Br. in Supp. of Prelim. Cert. 2.

On January 12, 2026, the Court held a hearing on the parties' motion for preliminary certification. ECF Nos. 23–24. At the hearing, the Court suggested minor amendments to the proposed Settlement Notice for clarity and to avoid the appearance that the Court was endorsing the settlement. The Court also asked Chittum to file an Amended Complaint reflecting the addition of class action claims under Maryland and Pennsylvania overtime laws. Shortly after that hearing, the parties filed an amended Settlement Notice, ECF No. 27, and Chittum filed an Amended Complaint asserting additional class action claims under the MWHL, Md. Code, Lab. & Empl. § 3-415(a), and the PMWA, 34 Pa. Code § 231.41, ECF Nos. 26, 28; Am. Compl.

On January 22, the Court entered an order that, among other things: (1) preliminarily certified the Settlement Collective; (2) preliminarily approved the Settlement Agreement; (3) appointed Mr. Coffield as class counsel and Chittum as class representative; (4) appointed ILYM as the settlement administrator; (5) approved the establishment of a common settlement fund; (6) established parameters for the filing of claims, exclusions, and objections by prospective collective and class members; and (7) set a date for a fairness hearing. Prelim. Cert. Order, ECF No. 33. The parties then made final amendments to the Settlement Notice, ECF No. 35, which the Court approved, ECF No. 37.

On February 12, ILYM mailed the Settlement Notice and FLSA Consent and Release Form to all 410 Settlement Collective members and emailed the same documents to all Settlement Collective members with known email addresses. ILYM Decl. ¶¶ 3, 7–8. ILYM also launched a settlement website, which is referenced in the Settlement Notice, with additional information for prospective collective and class members including the full Settlement Agreement. *Id.* ¶ 8; *see* ILYM Grp., *Chittum v. National Lutheran*, https://nationallutheran action.com [https://perma.cc/K4KB-4UMK]. The deadline for Settlement Collective members to object to the settlement or request exclusion from their respective state overtime law classes was

March 16, 2026. ILYM Decl. ¶¶ 14–15. Nine of ILYM's mailings were initially returned as undeliverable. *Id.* ¶ 10. However, ILYM performed skip traces, obtained updated addresses, and sent the Settlement Notice and FLSA Consent and Release Form to the nine updated addresses. *Id.* ¶¶ 11–12. Ultimately, none of the mailings were "deemed undeliverable." *Id.* ¶ 12. The notice and claims period resulted in no objections, no requests for exclusion from the Rule 23 class action settlement, and sixty-nine signed FLSA Consent and Release forms. *Id.* ¶¶ 13–15; Br. in Supp. 4, 9.

The parties moved for final approval of the settlement on April 6, 2026, Joint Mot. for Approval, and the Court heard from the parties at a fairness hearing on April 13, ECF No. 40.

## II. Proposed Settlement

The proposed Settlement Agreement provides that National Lutheran will pay a gross settlement amount of $289,530.29, plus all required employer-side taxes, in exchange for the full and final settlement of released FLSA and state-law claims. Agreement ¶¶ 4, 4.1. Of the gross settlement amount, $104,000.00 is allocated to attorney's fees and costs for Mr. Coffield, $14,530.25 is allocated to administration fees and costs for ILYM, $1,000.00 is allocated to a service award for Chittum, and the remaining $170,000.04 is allocated to a fund for the payment of claimants. *Id.* ¶¶ 4.2, 4.3.1, 5, 5.1. Any portion of the $170,000.04 fund that is not paid to claimants will be returned to National Lutheran by ILYM. *Id.* ¶ 4.2.

A Settlement Collective member must affirmatively "opt in" to the FLSA collective action settlement by returning a signed FLSA Consent and Release form to ILYM. *Id.* ¶ 4.3.5. Conversely, a Settlement Collective member automatically participates in the Rule 23 class action settlement *unless* he or she "opts out" by submitting a signed request for exclusion to ILYM. *Id.* ¶¶ 4.3.6–4.3.8. Settlement Collective members who "opt in" to the FLSA collective action settlement agree to release:

any and all Claims arising during the Damages Period[4] for overtime wages arising from (i) the alleged duplicative counting of hours in calculating overtime rates, or (ii) the alleged commission of shift differentials, bonuses or other forms of incentive compensation from the calculation of overtime rates, including for such Claims any liquidated damages, interest, costs, litigation expenses and attorneys' fees pursuant to the FLSA, 29 U.S.C. § 201, et seq.

*Id.* ¶ 1.13 ("Released FLSA Claims"). Settlement Collective members who do not "opt out" of

the Rule 23 class action settlement agree to release:

any and all Claims arising during the Damages Period for overtime wages arising from (i) the alleged duplicative counting of hours in calculating overtime rates, or (ii) the alleged omission of shift differentials, bonuses or other forms of incentive compensation from the calculation of overtime rates, including for such Claims any liquidated damages, interest, costs, litigation expenses and attorneys' fees pursuant to Virginia, Pennsylvania or Maryland state and local wage and hour laws and wage payment laws, including the Maryland Wage/Hour Law ("MWHL"), Md. Ann. LE art. § 3-401 et seq., the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Ann. LE art. § 3-501 et seq., the Montgomery County (Maryland) Minimum Wage Law, Chapter 27, Article XI of the Montgomery County Code, the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 et seq., the Pennsylvania Minimum Wage Act, 43 P.S. § 333,101 et seq., the Virginia Minimum Wage Act, Va. Code § 40.1- 28 et seq., Virginia Wage Payment Act, Va. Code § 40.1-29, and Virginia Overtime Wage Act, § 40.1-29.2.

*Id.* ¶ 1.14 ("Released State Law Claims").

Each Settlement Collective member receives his or her individual "pro rata" settlement amount, calculated based on the FLSA and applicable state law, unless he or she *both*: (1) does not "opt in" to the FLSA settlement, and (2) "opts out" of the Rule 23 state overtime law settlement. *Id.* ¶¶ 4.2.1, 4.3.10. According to the parties, the individual settlement amounts represent about 150% of each Settlement Collective member's "best day wage damages" and about 75% of each Settlement Collective member's "best day total damages, including liquidated damages." Br. in Supp. 8. The highest individual settlement payment is $6,283.65, the average individual settlement payment is $413.96, and the lowest individual settlement payment is $1.53. ILYM Decl. ¶ 18; *see* Br. in Supp. 19. The Settlement Agreement provides that ILYM will mail

---

[4] The "Damages Period" runs from October 11, 2021, to December 6, 2024. Agreement ¶ 1.5.

6

settlement checks within seven days of the Court's entry of a final order approving the settlement. Agreement ¶ 4.3.10. Then, within ten days after ILYM distributes the final payment, the parties will file a stipulation of dismissal with the Court. *Id.* ¶ 7.

### III. Discussion

"A collective action under the Fair Labor Standards Act (FLSA) differs from a class action under Federal Rule of Civil Procedure 23 because potential plaintiffs can join an FLSA collective action only by affirmatively giving consent in writing to become a party." *Degidio v. Crazy Horse Saloon & Rest. Inc*, 880 F.3d 135, 137 n.1 (4th Cir. 2018) (citing 29 U.S.C. § 216(b)). "In a class action, by contrast, plaintiffs are presumed to be members of a class unless they affirmatively opt out of the class proceeding." *Id.* (citing Fed. R. Civ. P. 23(b)(3)). Despite this distinction, it is well established among courts in the Fourth Circuit "that there is no conflict in allowing FLSA [collectives] and Rule 23 classes to proceed together." *Calderon v. GEICO Gen. Ins. Co.*, 279 F.R.D. 337, 342 (D. Md. 2012); *see Roldan v. Bland Landscaping Co., Inc.*, 341 F.R.D. 23, 31 (W.D.N.C. 2022) (collecting cases). So-called "hybrid" cases that include both a collective action claim and a class action claim "must—like any stand-alone FLSA case or stand-alone class suit—meet the collective action requirements to proceed as an FLSA case and the class action requirements to proceed as a class suit." 7 *Newberg & Rubenstein on Class Actions* § 23:40 (6th ed. June 2026 update); *see Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 676 (D. Md. 2011) (finding that "collective and class actions are not incompatible" but "must still meet the requirements for [a] collective action and class action"). While the FLSA and Rule 23 standards for final settlement approval overlap significantly, the standards are not identical, so the Court considers whether the proposed Settlement Agreement satisfies both standards.

A.      *Settlement Approval is Appropriate under Rule 23*

"The claims . . . of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Rule 23(e) sets out the requirements the Court must fulfill before approving a class action settlement. *See id.*

Rule 23(e) requires that the Court "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). "But it does not specify what the notice must say. Rather, the notice need only fairly apprise the prospective members of the class of the terms of the settlement and the options that are open to them in connection with the proceedings." *McAdams v. Robinson*, 26 F.4th 149, 158 (4th Cir. 2022) (cleaned up). This requirement has been met. The Court approved the parties' proposed Settlement Notice and distribution of the Settlement Notice by ILYM. *See* Prelim. Cert. Order 4; *see also* ECF No. 37 (approving final amendments to Settlement Notice before distribution). ILYM mailed the Settlement Notice to all prospective members of the class. ILYM Decl. ¶ 7. No mailings were ultimately deemed undeliverable. *Id.* ¶ 12. The Settlement Notice apprised the prospective class members of the individualized payments they would receive in exchange for releasing their state law claims against National Lutheran, explained that they would join the class action settlement by operation of law unless they requested exclusion, set out the process for requesting exclusion from the settlement, set out the process for objecting to the settlement and presenting such objection at the fairness hearing, and explained the difference between the "opt out" exclusion process for the Rule 23 settlement and the "opt in" process for the FLSA settlement. *See generally* Notice. The Settlement Notice also directed prospective class members to the settlement website established by ILYM, which included the full Settlement Agreement and additional information. *See id.* at 11. Thus, all class members were appropriately apprised of the options available to them in connection with the proceedings.

Next, Rule 23(e) provides that the Court may approve a class action settlement "only after a hearing." Fed. R. Civ. P. 23(e)(2). This requirement has also been fulfilled. The Court held the requisite fairness hearing on April 13, 2026. ECF No. 40.

Finally, Rule 23(e) provides that the Court may approve a class action settlement "only on a finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In determining whether the proposed settlement is fair, reasonable, and adequate, the Court "acts as a fiduciary of the class" and "has a fiduciary responsibility to ensure that the settlement is fair and not a product of collusion, and that the class members' interests were adequately represented." *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 521 (4th Cir. 2022) (cleaned up). The Court's finding as to whether a proposed settlement is fair, reasonable, and adequate is entitled to "considerable deference" because the Court "is exposed to the litigants and their strategies, positions, and proofs, and is on the firing line and can evaluate the action accordingly." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020) (cleaned up).

To determine whether a proposed settlement is fair, reasonable, and adequate, Rule 23(e) directs the Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3)[5]; and

---

[5] "***Identifying Agreements.*** The parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3).

(D) the proposal treats class members equitably relative to each other.[6]

Fed. R. Civ. P. 23(e)(2). The Court indulges "a strong initial presumption that the compromise is fair and reasonable" when applying these factors, *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001) (citation omitted), because "courts have long recognized a strong public policy supporting settlement of class actions," *S.C. Nat. Bank v. Stone*, 749 F. Supp. 1419, 1430 (D.S.C. 1990).

The Court is satisfied that the proposed settlement is fair, reasonable, and adequate considering each of the enumerated factors.

1.    *Adequacy of Representation*

This factor requires the Court to assess the "the actual performance of counsel acting on behalf of the class." 4 *Newberg & Rubenstein on Class Actions* § 13:48 (6th ed. June 2026 update) (quoting Fed. R. Civ. P. 23(e)(2)(A) advisory committee note to the 2018 amendment). For instance, the Court may "consider 'the nature and amount of discovery in this or other cases' or 'the actual outcomes of other cases,' as this information 'may indicate whether counsel negotiating on behalf of the class had an adequate information base.'" *Id.* (quoting Fed. R. Civ. P. 23(e)(2)(A) advisory committee note (2018)). The Court must also ensure "the named

---

[6] Courts in the Fourth Circuit traditionally assessed proposed class action settlements under a set of factors related to "fairness" and a set of factors related to "adequacy." *See In re Jiffy Lube Sec. Litig.*, 927 F.3d 155, 159 (4th Cir. 1991) (articulating factors). However, Rule 23(e) was amended in 2018 to specify the factors a court should consider in determining whether a proposed settlement is fair, adequate, and reasonable, so this Court proceeds under the text of the Federal Rule of Civil Procedure itself. As another court has explained:

> The Fourth Circuit developed its own "multifactor standards" - the so-called *Jiffy Lube* factors - before the 2018 amendment of Rule 23(e)(2), which "specif[ied] factors for assessing the 'fairness, reasonableness, and adequacy' of a class-action settlement." *Lumber Liquidators*, 952 F.3d at 484 & n.8 (citing *Jiffy Lube Sec. Litig.*, 927 F.2d at 159). Although this Court must "apply [Rule 23(e)(2)] in the manner in which it is written," *United States v. Carey*, 120 F.3d 509, 512 (4th Cir. 1997), pre-amendment precedent remains relevant because the *Jiffy Lube* factors "almost completely overlap with the new Rule 23(e)(2) factors." *Lumber Liquidators*, 952 F.3d at 484 n.8.

*Khoshaba v. Stilwell*, No. 2:24cv237, 2025 WL 3298314, at *3 n.3 (E.D. Va. Nov. 26, 2025).

plaintiffs and the class 'share common objectives and the same factual and legal positions,' ensuring that there are no 'fundamental' conflicts that go to the 'heart of the litigation.'" *D&M Farms v. Birdsong Corp.*, No. 2:19cv463, 2021 WL 1256905, at *3 (E.D. Va. Apr. 5, 2021) (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430–31 (4th Cir. 2003)).

The Court finds the Mr. Coffield and Chittum provided adequate representation. Mr. Coffield has practiced employment law for over a decade and litigated numerous wage and hour cases, including class and collective actions, in the Eastern and Western Districts of Virginia. *See* Coffield Decl. ¶¶ 3–4 (collecting cases). Indeed, Mr. Coffield regularly appears before this Court representing plaintiffs in employment class and collective actions, and he has proven himself a competent litigator and negotiator. *See Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 501–02 (E.D. Va. 1995) (noting class counsel's "wealth of experience and knowledge"). Moreover, Chittum's objectives are aligned with those of the other class members because her "claims arise from the same alleged misconduct as the remainder of the Class," *Khoshaba*, 2025 WL 3298314, at *3, and there is nothing to indicate a conflict of interests.

2.      *Arm's Length Negotiations*

This factor "aims to root out settlements that may benefit the plaintiffs' lawyer at the class's expense, sometimes called 'collusive settlements.'" 4 *Newberg & Rubenstein on Class Actions* § 13:50 (6th ed. June 2026 update). "Absent evidence to the contrary, the Court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Archbold v. Wells Fargo Bank, N.A.*, No. 3:13cv24599, 2015 WL 4276295, at *2 (S.D.W. Va. July 14, 2015); *see Kirven v. Cent. States Health & Life Co. of Omaha*, No. 3:11-2149, 2015 WL 1314086, *5 (D.S.C. 2015) (same).

The Court finds that the proposed settlement was reached at arm's length. "Nothing in the record suggests that the settlement was collusive or that the Settlement Agreement was not the

product of good-faith bargaining between the parties." *Compton v. N. Cent. Va. Rests., Inc.*, No. 5:20cv73, 2022 WL 4008719, at *3 (W.D. Va. Sept. 22, 2022) (citations omitted). Moreover, the negotiations in this case were conducted "among experienced counsel over the course of several months." Br. in Supp. 8. The "protracted negotiations" between the parties included "exchange and debate over legal theories and damages models." *Id.* "These adversarial encounters dispel any apprehension of collusion between the parties." *In re NeuStar, Inc. Sec. Litig.*, No. 1:14cv885, 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015); *see In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 840 (E.D. Va. 2016) ("Courts look to the number of meetings between the parties to discuss settlement, the quality of those negotiations, and the duration of time over which negotiations took place.").

3.    *Adequacy of Relief*

To determine whether the relief is adequate, the Court considers the individual subfactors set out in Rule 23(e). *See* Fed. R. Civ. P. 23(e)(2)(C). Broadly speaking, "'adequacy' for Rule 23(e)(2) settlement approval purposes . . . . addresses whether a settlement is good enough to justify extinguishing the claims of absent individual class members." *Allen*, 28 F.4th at 526 n.7 (emphasis omitted). "Essentially, the court should weigh the benefits of the settlement to the class against the strength of the defense, and the expense and uncertainty of the litigation while accounting for class objections." *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 474 (W.D. Va. 2011) (citing *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 255–58 (E.D. Va. 2009); *Strang*, 890 F. Supp. at 502).

The Court finds that the relief provided to the class is adequate. The "costs, risks and delay of trial and appeal" were substantial. Fed. R. Civ. P. 23(e)(2)(C)(i). If Plaintiffs had opted to move forward with litigation, they would have faced a "potentially difficult fight on the matters regarding the substantive overtime claims at issue, such as the discretionary or non-

12

discretionary nature of the bonuses at issue, the issue of willfulness and the length of the lookback period, and [National Lutheran's] good faith defense affecting the (un)availability of liquidated damages." Br. in Supp. 10. The proposed settlement allows the class members to recover 150% of their alleged unpaid overtime wages and 75% of their alleged total damages, including liquidated damages. *Id.*; Coffield Decl. ¶ 14. Mr. Coffield attests that "in [his] experience in this area of law, recoveries this close to full back wages and liquidated damages are fairly rare in multi-plaintiff wage and hour litigation." Coffield Decl. ¶ 14. This substantial recovery demonstrates the adequacy of the settlement considering the "difficulties of proof" Plaintiffs would have faced in litigation and National Lutheran's "strong defenses." *Jiffy Lube Sec. Litig.*, 927 F.2d at 159, including its good faith defense which would bar recovery of liquidated damages if successful, *see McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 245 (4th Cir. 2016) ("As a potential defense to liquidated damages, however, employers may seek to show that they acted in 'good faith' and 'had reasonable grounds for believing that [their] act or omission was not a violation of the [FLSA].'" (quoting 29 U.S.C. § 260)).

Moreover, the "method of distributing relief to the class, including the method of processing class-member claims," is effective. Fed. R. Civ. P. 23(e)(2)(C)(ii). Under the Settlement Agreement, ILYM will mail checks to all class members within seven days of the entry of an order granting final settlement approval. Agreement ¶ 4.3.10. There are 410 class members of the Settlement Collective with no members having opted out, and ILYM has current addresses for all class members, having conducted skip tracing to update any deficient addresses during the notice and claims period. ILYM Decl. ¶¶ 11–15. ILYM "has extensive experience in administering Class Action Settlements, including direct mail services, database management, claims processing and settlement fund distribution services for Class Actions ranging in size

from 26 to 4.5 million Settlement Class Members." *Id.* ¶ 2. As such, ILYM is well equipped to ensure smooth processing of payment to this relatively small class of 410 individuals.

Nor do the "the terms of any proposed award of attorney's fees" detract from the adequacy of the relief provided to class members. Fed. R. Civ. P. 23(e)(2)(C)(iii). The Settlement Agreement provides for attorney's fees and costs of $104,000.00 to be distributed to Mr. Coffield, which equals approximately 35.9% of the gross settlement amount of $289,530.29. *See* Agreement ¶¶ 4, 5; Coffield Decl. ¶ 7. As the Court addresses in greater depth in the next section, these attorney's fees are reasonable under the applicable standard.

No "agreement[s] required to be identified under Rule 23(e)(3)" exist in this case. Fed. R. Civ. P. 23(e)(2)(C)(iv); *see* 4 *Newberg & Rubenstein on Class Actions* § 13:55 (6th ed. June 2026 update) (explaining that this subfactor is concerned with "side agreements" that are "beyond the settlement agreement itself"). The sole agreement affecting the rights of the class members is the proposed Settlement Agreement itself.

Finally, the Court notes that there were no objections from class members. ILYM Dec. ¶ 15; Br. in Supp. 2. The absence of any opposition to the settlement from prospective class members favors finding that the proposed settlement is adequate. *See, e.g.*, *McAdams*, 26 F.4th at 159 (explaining that court analyzing the adequacy of a settlement should consider "the degree of opposition to the settlement"); *Lumber Liquidators*, 952 F.3d at 484 (same); *Goodlaxson v. Mayor & City Council of Balt.*, 776 F. Supp. 3d 311, 321 (D. Md. 2025) (finding that the absence of objections "weighs strongly in favor of finding that the [settlement] should be finally approved" because "[i]t is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members" (citation omitted)).

4.    *Equitable Treatment*

14

This factor requires the Court to assess whether the proposed settlement provides for "distribution of relief that favors some class members at the expense of others." 4 *Newberg & Rubenstein on Class Actions* § 13:56 (6th ed. June 2026 update). The Court may also consider any "incentive payment" provided to the class representative "in return for the service that they provided to the class by undertaking that role," though service awards generally "do[] not raise a red flag because the class representative and class members are not similar situated in regard to the single piece of differential recovery." *Id.*

The Court finds that the proposed settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). Each class member receives an individualized payment "made on a pro rata basis based on individual alleged overtime damages calculations under the Fair Labor Standards Act, and applicable state law," including "alleged backpay overtime wages and alleged liquidated damages consistent with said calculations." Agreement ¶ 4.2.1. Such individualized, pro rata distributions are inherently equitable because they provides each class member with relief commensurate to the alleged injury suffered. *See Khoshaba*, 2025 WL 3298314, at *5 ("Authorized Claimants will receive their pro rata shares of the Net Settlement Fund based on their recognized losses . . . . This mechanical arrangement easily clears the equitable-treatment bar." (citing *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d at 660, 668–69)). Moreover, the Settlement Agreement provides for a modest $1,000 service award to Chittum, which is reasonable given her distinct role as a class representative and the insight she provided to Plaintiffs' counsel throughout the case. *See Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 578 (E.D. Va. 2016) ("Courts recognize the purpose and appropriateness of service awards to Class Representatives."); *see also, e.g.*, *Compton*, 2022 WL 4008719, at *5 (approving $5,000 service award to the named plaintiff in a hybrid class and collective action settlement for a gross amount of $705,000).

B.    *Settlement Approval is Appropriate under the FLSA*

"All FLSA settlements must be approved either by the United States Department of Labor or the court," including collective action settlements. *Baust v. City of Va. Beach*, 574 F. Supp. 3d 358, 363 (E.D. Va. 2021). While the "Fourth Circuit has not addressed a standard or factors to consider in evaluating whether to approve a settlement under the FLSA, courts in this circuit have followed the standard articulated in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)." *Vazquez-Aguilar v. Gasca*, 513 F. Supp. 3d 675, 680 (E.D.N.C. 2021); *see, e.g.*, *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 502–03 (M.D.N.C. 2018) (applying *Lynn's Food Stores*); *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 407–411 (D. Md. 2014) (same); *Patel v. Barot*, 15 F. Supp. 3d 648, 654 (E.D. Va. 2014) (same). Under that standard, the Court must determine whether the proposed Settlement Agreement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1355. To do so, the Court undertakes a three-step analysis that considers: "(1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorney's fees." *Vazquez-Aguilar*, 513 F. Supp. 3d at 680 (quoting *Duprey*, 30 F. Supp. 3d at 408). These requirements "are most likely to be satisfied where there is an 'assurance of an adversarial context' and the employee is 'represented by an attorney who can protect his [or her] rights under the statute.'" *Duprey*, 30 F. Supp. 3d at 408 (other brackets omitted) (quoting *Lynn's Food Stores*, 679 F.2d at 1354).

1.    *Bona Fide Dispute*

To determine "whether a bona fide dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings . . . along with the representations and recitals in the proposed settlement agreement." *Duprey*, 30 F. Supp. 3d at 408 (emphasis omitted) (citation

16

omitted). "In the context of unpaid-overtime claims brought under the FLSA, a bona fide dispute exists when an employee makes a claim that he or she is entitled to overtime payment." *Baust*, 574 F. Supp. 3d at 365 (cleaned up).

Here, Plaintiffs allege that National Lutheran "has violated and continue[s] to violate the FLSA" through two overtime policies: (1) "Not paying overtime compensation at 1.5 times . . . employees' regular rates of pay"; and (2) "Not including shift differentials or other forms of incentive pay in calculating overtime rates." Am. Compl. ¶ 3. Moreover, Plaintiffs allege that National Lutheran "willfully violated the FLSA" through these policies and "intended to deprive Plaintiff and similarly situated employees of the overtime pay they were entitled to under the FLSA . . . or acted with reckless disregard for these employees' rights under the FLSA." *Id.* ¶¶ 40, 44. Based on these allegations, Plaintiffs assert a collective action claim under the FLSA for willful violation of the FLSA's overtime pay requirement, 29 U.S.C. §§ 209, 216(b), 255(a). *Id.* ¶¶ 74–81. National Lutheran "denie[s] liability and dispute[s] Plaintiff's allegations." Br. in Supp. 2. Moreover, National Lutheran does not "admit any wrongdoing or any liability" in the proposed Settlement Agreement. Agreement ¶ E; *see id.* ¶¶ 10.1–10.2. Thus, the Settlement Agreement resolves a bona fide dispute over National Lutheran's liability under the FLSA by providing for the release of FLSA claims in exchange for payment. *Id.* ¶¶ 1.13, 4.3.5, 4.3.10. *See Baust*, 574 F. Supp. 3d at 365 (finding a bona fide dispute existed in FLSA collective action where the parties disagreed "as to whether Plaintiffs [were] entitled to the overtime pay demanded" under the FLSA, "Defendant [did] not admit liability" in the Settlement Agreement, and "the Settlement Agreement resolve[d] Plaintiffs' claims by providing for their dismissal in exchange for a payment").

2.    *Fairness & Reasonableness*

"'As a second step, the terms of the proposed settlement agreement must be assessed for fairness and reasonableness,' applying 'the same fairness factors generally considered for court approval of class action settlements under Federal Rule of Civil Procedure 23.'" *Compton*, 2022 WL 4008719, at *4 (brackets omitted) (quoting *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)); *see Vazquez-Aguilar*, 513 F. Supp. 3d at 680 (explaining that the Court must consider "the relevant factors from Rule 23" (quoting *Duprey*, 30 F. Supp. 3d at 408)). Because the Court has found that the proposed Settlement Agreement is fair, reasonable, and adequate under Rule 23, the Court also finds that it is fair and reasonable under the FLSA. *See Reynolds v. Fid. Invs. Inst. Operations Co., Inc.*, No. 1:18cv423, 2020 WL 91874, at *6 (M.D.N.C. Jan. 8, 2020) (incorporating Rule 23 analysis to find that FLSA settlement was "fair and reasonable").

3.      *Reasonableness of Attorney's Fees*

Both the FLSA and Rule 23 provide for the award of reasonable attorney's fees and costs. Under the FLSA, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and costs of the action." 21 U.S.C. § 216(b). Under Rule 23(h), in a class action, the Court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h); *see also* Fed. R. Civ P. 23(e)(2)(C)(iii) (requiring as part of the Rule 23 adequacy analysis that the Court assess "the terms of any proposed award of attorney's fees").

"[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). There are two basic approaches to calculating reasonable attorney's fees in a case involving a common fund: (1) the "percentage-of-recovery" or "percentage-of-the fund" method; and (2) the lodestar method. *In re Zetia (Ezetimibe) Antitrust*

18

*Litig.*, 699 F. Supp. 3d 448, 461 (E.D. Va. 2023) (citation omitted). "The percentage of the fund method provides that the court awards attorneys' fees as a percentage of the common fund, while the lodestar method requires the court to determine the hours reasonably expended by counsel that created, protected, or preserved the fund, then to multiply that figure by a reasonable hourly rate." *Kirkpatrick*, 352 F. Supp. 3d at 504 (cleaned up). The Court "has discretion to use either method." *Galloway v. Williams*, No. 3:19cv470, 2020 WL 7482191, at *4 (E.D. Va. Dec. 18, 2020) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)).

In this case, Plaintiffs' counsel has a contingency fee arrangement, and he seeks attorney's fees based on the percentage of the fund method. *See* Br. in Supp. 11–12. "District courts in the Fourth Circuit, and the majority of courts in other jurisdictions, use the percentage of recovery method in common fund cases." *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 481 (D. Md. 2014) (citing *In re The Mills Corp,*, 265 F.R.D. at 260; *Strang*, 890 F. Supp. at 502); *see* David F. Herr, *Ann. Manual for Complex Litig.* § 14.121 (4th ed. Aug. 2025 update) (noting that "the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases"); *id.* at nn.478–79 (collecting cases). Accordingly, the Court finds it appropriate to apply the percentage method. However, "where the parties reach a settlement on behalf of an FLSA collective and Rule 23 classes," it is appropriate to "assess the reasonableness of fees by using the percentage method . . . supplemented by a lodestar cross-check." *Reynolds v. Fid. Invs. Inst. Operations Co., Inc.*, No. 1:18cv423, 2020 WL 92092, at *2 (M.D.N.C. Jan. 8, 2020) (collecting cases). The "lodestar cross-check" compares "(1) a calculation of attorney's fees using the percentage-of-recovery method to (2) a rough or imprecise lodestar calculation." *Lumber Liquidators*, 952 F.3d at 482 n.7 (citation omitted). Thus, the Court "will take advantage of both methods and employ a lodestar multiplier cross-

check to further evaluate the . . . attorney's fee award." *Domonoske*, 790 F. Supp. 2d at 475

(cleaned up).

The Court first assesses whether the percentage contingency fee is reasonable considering the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978) (adopting the twelve factors in

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *overruled on*

*other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)); *see, e.g.*, *Reynolds*, 2020 WL

92092, at *2 (assessing reasonableness of percentage contingency fee using the *Barber* factors);

*Kirkpatrick*, 352 F. Supp. 3d at 505–06 (same). The Court need not consider the factors that are

inapplicable, but "the factors that do apply should be considered." *In re Abrams & Abrams, P.A.*,

605 F.3d 238, 244 (4th Cir. 2010).

The parties have agreed that Plaintiffs' counsel will receive $104,000.00, equal to about

35.9% of the gross settlement amount, "for attorney's fees and costs." Agreement ¶ 5. Counsel

"undertook this litigation on a contingency fee basis and bore all risks of loss." Coffield Decl. ¶

13. "Plaintiff's fee agreement in this case provides for a 40% attorney fee, plus costs." *Id.* ¶ 6.

Counsel "voluntarily reduced" that amount "to the 35.9% amount" in the Settlement Agreement.

*Id.* ¶ 13. In the course of handling this case, he "incurred $405.00 in costs." *Id.* ¶ 10.

Considering the applicable factors, the Court finds that a 35.9% fee and cost award in this

case is reasonable. Counsel is the sole attorney who handled this case, and he spent more than

172 hours working on this case over roughly two years. *See id.* ¶¶ 3, 8, 10. The case involved skill and labor-intensive tasks, including researching complex issues at the intersection of the FLSA and three states' overtime wage laws, analyzing large volumes of data, creating a damages model to allocate damages for 410 settlement members, negotiating a favorable settlement, and drafting lengthy briefs for motions related to settlement. *Id.* ¶ 9; *see Reynolds*, 2020 WL 92092, at *3 (noting "[c]lass and collective wage and hour cases require intensive resources"); *Kirkpatrick*, 352 F. Supp. 3d at 505 (explaining that "FLSA collective actions involve law which changes regularly due to growing jurisprudence across the country"). Counsel had to turn down prospective clients because of the demanding nature of this case. Coffield Decl. ¶ 12. Moreover, counsel attests that a 40% contingency fee is typical in employment cases, so his requested fee of 35.9% represents a discount compared to the customary rate. *Id.* ¶¶ 6–7; *see Winingear v. City of Norfolk, Va.*, No. 2:12cv560, 2014 WL 3500996, at *6 (E.D. Va. July 14, 2014) (approving fee in hybrid class and collective action employment case where plaintiff signed fee agreement for "40% of the recovery," but counsel sought "a reduced percentage of recovery"). By undertaking this case on a contingency agreement, Coffield Decl. ¶ 12, counsel shouldered the risk of loss and provided Chittum and all class and collective members with access to the courts that they might otherwise have been unable to obtain, *see Abrams*, 605 F.3d at 245 (emphasizing that contingency fee agreements "help secure for the impecunious access both to counsel and to court"). Counsel obtained an impressive result, recovering about 75% of total alleged back wages and liquidated damages, which counsel attests is relatively rare in wage and hour litigation. Coffield Decl. ¶ 14; *see Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006) ("[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained."). Finally, the fee and cost award of 35.9% in this case is comparable to that in like cases. *See, e.g.*, *Winingear*, 2014 WL 3500996, at *6 (awarding $1,230,250.00 in fees in a hybrid

21

collective and class action, equal to 38.44% of the gross settlement amount, and noting that "this Court has routinely approved percentage recoveries in FLSA cases approaching forty percent of the total recovery"); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 465 (D. Md. 2014) (noting that "[f]ees awarded under 'the percentage-of-recovery' method in settlements under $100 million have ranged from 15% to 40%" and that "cases generating comparatively smaller funds can require a higher percentage fee award" (citation omitted)).

"A lodestar cross-check of the [fee and cost award in this case] confirms its reasonableness." *Kirkpatrick*, 352 F. Supp. 3d at 506 (citation omitted). Counsel, as the sole attorney handling the case, billed a total of 172.77 hours. Coffield Decl. ¶ 10. Counsel's hourly rate was $475 at the outset of the case in early 2024 and increased to $545. *Id.* Multiplying counsel's hours worked by his hourly rate yields a total fee of $87,660.27. *Id.* Moreover, counsel incurred $405.00 in costs. *Id.* Thus, the fee and cost award of $104,000 in the Settlement Agreement represents a modest multiplier of 1.18, which is well within the range of multipliers approved by courts in this circuit. *See, e.g.*, *Domonoske*, 790 F. Supp. 2d at 476 (collecting cases and finding a "lodestar multiplier of about 1.8" to be "well within the normal range of lodestar multipliers"); *Kirkpatrick*, 352 F. Supp. 3d at 507 ("Courts have found that lodestar multipliers ranging from 2 to 4.5 demonstrate the reasonableness of a requested percentage fee."); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) (same). Accordingly, the Court finds the proposed attorney's fees and costs reasonable.

### IV. Conclusion

For the foregoing reasons, the Court will GRANT the Joint Motion for Final Settlement Approval, ECF No. 38, approve the Settlement Agreement, ECF No. 21-1, and dismiss the case with prejudice. The Court will retain jurisdiction for 120 days from today's date for the exclusive

purpose of enforcing the Settlement Agreement and this Court's Order. A separate order will enter.

The Clerk shall send a copy of this Memorandum Opinion to all counsel of record.

ENTER: June 18, 2026

Joel C. Hoppe
United States Magistrate Judge

23